Filing # 77839680 E-Filed 09/13/2018 11:51:53 AM

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR CHARLOTTE COUNTY, FLORIDA
CIVIL DIVISON**

JEREMY WILSON,                                   CASE NO.:

       Plaintiff,

vs.

RELIANT REAL ESTATE
MANAGEMENT LLC, d/b/a
STORESMART OF ENGLEWOOD,
a Florida Limited Liability Company,

       Defendant.

_____/

**COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, JEREMY WILSON ("MR. WILSON" or "Plaintiff"), by and through the

undersigned counsel, files this Complaint against Defendant, RELIANT REAL ESTATE

MANAGEMENT LLC, d/b/a STORESMART OF ENGLEWOOD, ("THE COMPANY"

or "Defendant"), a Florida Limited Liability Company, and states as follows:

**JURISDICTION AND VENUE**

1.       This is an action for damages exceeding $15,000.00, exclusive of attorney's

fees, interest, and costs.

2.       Jurisdiction in this Court is proper as the claims are brought pursuant to the

Fair Labor Standards Act, as amended (29 U.S.C. §201, et seq., hereinafter called the

"FLSA") to recover overtime wages, an additional equal amount as liquidated damages,

and reasonable attorneys' fees and costs. Plaintiff is also seeking unpaid wages,

compensatory damages, back pay, front pay, and attorneys' fees and costs, pursuant to Section

448, Florida Statutes, ("Chapter 448"), and Florida's Private Whistleblower Act, Section

448.102(3), Florida Statutes ("FWA").

3.      This Court has original jurisdiction over Plaintiff's claims as they arise under state and federal law.

4.      This Court has jurisdiction because, at all times material to this Complaint, Plaintiff worked for Defendant in Charlotte County, Florida.

5.      The illegal conduct complained of and the resultant injury occurred within the judicial district in and for Charlotte County, Florida.

## PARTIES

6.      At all times material hereto, Plaintiff was a resident of Charlotte County, Florida.

7.      At all times material hereto, Defendant was, and continues to be, a Florida Limited Liability Corporation, and continues to be engaged in business in, among other places, Charlotte County, Florida.

8.      At all times material hereto, Plaintiff was "engaged in commerce" within the meaning of §6 and §7 of the FLSA.

9.      At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of FLSA, Chapter 448, and the FWA.

10.     At all times material hereto, Defendant was the "employer" within the meaning of the FLSA, Chapter 448, and the FWA.

11.     At all times material hereto, Defendant was, and continues to be, "an enterprise engaged in commerce," within the meaning of FLSA.

12.     At all times material hereto, Defendant was, and continues to be, an enterprise engaged in the "production of goods for commerce," within the meaning of the FLSA.

13.     Based upon information and belief, the annual gross revenue of Defendant, during all time relevant, was in excess of $500,000.00 per annum during the relevant time periods.

14.     At all times relevant hereto, Defendant was primarily engaged in providing storage and rental management services in Charlotte County, Florida.

15.     At all times material hereto, Defendant had two (2) or more employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce.

16.     At all times material hereto, the work performed by the Plaintiff was directly essential to the business performed by Defendant.

17.     At all times material hereto, Defendant employed ten (10) or more employees, for purposes of being defined as an "employer" under the FWA and an employer under the FLSA.

18.     This Court has jurisdiction over Plaintiff's claims because, at all times material to this Complaint, Plaintiff worked for Defendant in Charlotte County, Florida, and lived in Charlotte County, Florida.

19.     The illegal conduct complained of and the resultant injury occurred, within the judicial district in and for Charlotte County, Florida.

## STATEMENT OF FACTS

20.     Plaintiff worked as a non-exempt, hourly-paid, Facility Manager for Defendant from September 20, 2017, until his termination on January 21, 2018.

21.     Plaintiff, in addition to being paid an hourly wage, performed non-exempt duties for Defendant and was therefore entitled to be compensated for overtime work.

22.     At various material times hereto, Plaintiff worked for Defendant in excess of forty (40) hours within a work week.

23.     Plaintiff was not exempt from overtime under the FLSA and should have been paid his full and proper overtime compensation.

24.     Defendant misclassified Plaintiff as an exempt employee under the FLSA for purposes of avoiding its obligations under the FLSA.

25.     Plaintiff regularly worked overtime hours during his employment with Defendant.

26.     Defendant failed to pay Plaintiff for his hours worked in excess of forty (40) hours each work each at one and one-half his regular rate of pay, as required by the FLSA.

27.     Plaintiff should have been compensated at the rate of one and one-half times Plaintiff's regular rate for those hours that Plaintiff worked in excess of forty (40) hours per week, as required by the FLSA.

28.     Defendant has violated Title 29 U.S.C. §§ 206-207 in that:

    a.  Plaintiff worked in excess of forty (40) hours in at least one or more work weeks during his period of employment with Defendant;

    b.  No payments or provisions for payment were made by Defendant to properly compensate Plaintiff at the statutory rate of one and one-half

times Plaintiff's regular rate for **all** hours worked in excess of forty (40)

hours per work week, as provided by the FLSA; and

c. Defendant failed to maintain proper time records as mandated by the

FLSA.

29.    Plaintiff estimates his FLSA damages to be, as follows: Plaintiff was paid

at a regular rate of $16.00 per hour. As such, Plaintiff's overtime rate should have been

$24.00 for each overtime hour worked ($16.00 X 1.5). **Plaintiff is therefore owed $24.00**

**per hour,** multiplied by his average stolen overtime hours worked per week of ten (10),

totaling $240.00 per work week ($24.00 X 10 OT HOURS). **Plaintiff's employment**

**lasted seventeen (17) work weeks. $240.00 X 17 weeks=$4,080.00 in unliquidated**

**damages, and $8,160.00 in liquidated damages.**

30.    Plaintiff has retained the law firm of RICHARD CELLER LEGAL, P.A. to

represent him in the litigation and has agreed to pay the firm a reasonable fee for its

services.

31.    As to Plaintiff's Whistleblower claims, Plaintiff's employment came to an

abrupt, and unexpected end, because he refused to partake in, and objected to, illegal

activities conducted by the company.

32.    Specifically, towards the end of his employment, between December 2017,

and January 2018, Plaintiff objected to, and refused to partake in, Defendant's practice of

engaging in fraudulent use of customer credit cards, such as charging customers' credit

cards without proper authorization from customers and charging customers' credit cards at

a substantially different and/or higher amount than the company had conveyed to

customers, without customer consent. These acts violate, among others, Section 817.61, Florida Statutes.

33.    Reasonably believing these practices to be unlawful, Plaintiff objected to same directly to his immediate Supervisor, Bek Allen, and company Owner, Todd Allen. He cautioned these management officials that these practices were illegal, and he then stated that he had no intention of engaging in same, and/or participating in any illegal activity.

34.    Additionally, during this same period, Plaintiff objected to these management officials regarding the company's unlawful pay practices, including its practice of requiring Plaintiff, and other hourly staff members, to arrive early and begin working before "clocking in" to their shifts, and to continue working after "clocking out" of their shifts, and failing/refusing to pay these "off the clock" workers at least the federal/state mandated minimum wage as required under Section 448.110, Florida Statutes, and the Fair Labor Standards Act, ("FLSA"), as well as their proper, and owed, overtime compensation under the FLSA.

35.    Plaintiff reasonably believed the foregoing practices to be in violation of state and/or federal law.

36.    Accordingly, Plaintiff objected directly to the management officials mentioned above, regarding the unlawful nature of these practices.

37.    Each of Plaintiff's foregoing objections and refusals in the months/weeks prior to his termination, constitutes protected activity pursuant to Section 448.102(3), Florida Statutes.

38.    Shortly thereafter, and in direct retaliation for his objections, Defendant terminated Plaintiff on January 21, 2018, without valid cause, reason, or explanation.

39.    The temporal proximity between Plaintiff's objections to Defendant's illegal conduct, or what he reasonably believed to be illegal conduct, and his termination, is two (2) months or less.

40.    Defendant did not have a legitimate, non-retaliatory reason for Plaintiff's termination.

41.    Any *post hoc* reason provided by Defendant in this litigation for Plaintiff's termination is a pretext and cover up for illegal retaliation.

42.    To establish a violation of the FWA, an employee must establish that: (1) he objected to or refused to participate in an illegal activity, policy, or practice or what he reasonably believed to be an illegal activity, policy, or practice; (2) he suffered an adverse employment action; and (3) the adverse employment action was causally linked to his objection or refusal. *See Aery v. Wallace Lincoln–Mercury, LLC,* 118 So.3d 904, 916 (Fla. 4th DCA 2013).

43.    Plaintiff has suffered damages as a result of Defendant's unlawful conduct, and wrongful termination of his employment.

44.    As to Plaintiff's Breach of Contract claims, in September 2017, Plaintiff entered into an oral employment agreement, ("Agreement"), with Defendant.

45.    Specifically, Defendant offered Plaintiff sixteen dollars ($16.00) per hour, for each hour worked for Defendant. Defendant also offered Plaintiff a promised increase to his hourly rate after ninety (90) days worked for Defendant, a commission rate of ten

dollars ($10.00) per unit rented, and a monthly housing stipend of one thousand two hundred fifty dollars ($1,250.00).

46.     Plaintiff accepted Defendant's offer, and in consideration of same, commenced his work on Defendant's behalf on September 20, 2017.

47.     The allegations in Paragraphs 44-46 above, created a legally binding and enforceable oral contract.

48.     However, at various times during Plaintiff's tenure, Defendant failed and/or refused to compensate Plaintiff for all his owed wages and other remuneration, including his agreed upon monthly housing stipend, and his agreed upon commission payments.

49.     At various times during Plaintiff's tenure, Defendant also failed and/or refused to compensate Plaintiff for all his hours worked for Defendant, including his due and proper overtime compensation for hours worked in excess of forty (40) hours per work week.

50.     Additionally, Defendant also failed and/or refused to abide by its promise to increase Plaintiff's hourly rate of pay after ninety (90) days worked for Defendant. This raise never occurred.

51.     Defendant's conduct in this regard breached the oral Contract between the parties.

52.     Despite demands by Plaintiff to date, Defendant has failed and/or refused to pay Plaintiff his contractually agreed upon wages, commission, and other remuneration, due and owing.

53.     Plaintiff has been damaged as a result of Defendant's breach, in the form of lost wages and remuneration.

54.     The damages Plaintiff is seeking, based on Defendant's breach of the oral Contract, are wages pursuant to Section 448, Florida Statutes.

55.     Plaintiff is entitled to unpaid wages, interest, and attorneys' fees and costs pursuant to Section 448.08, Florida Statutes.

## COUNT I
## VIOLATION OF 29 U.S.C. §207 OVERTIME COMPENSATION UNDER FLSA

56.     Plaintiff re-alleges and incorporates Paragraphs 1-30, of the Complaint, as if fully set forth herein.

57.     During his employment, Plaintiff worked in excess of the forty (40) hours per week, in at least one or more work weeks, for which Plaintiff was not compensated at the statutory rate of one and one-half times Plaintiff's regular rate of pay for all hours worked.

58.     Plaintiff was, and is, entitled to be paid at the statutory rate of one and one-half times Plaintiff's regular rate of pay for all hours worked in excess of forty (40) hours.

59.     At all times material hereto, Defendant failed, and continues to fail, to maintain proper time records as mandated by the FLSA.

60.     Defendant's actions were willful and/or showed reckless disregard for the provisions of the FLSA, as evidenced by its failure to compensate Plaintiff at the statutory rate of one and one-half times Plaintiff's regular rate of pay for the hours worked in excess of forty (40) hours per week when it knew, or should have known, such was, and is due.

61.     Prior to Plaintiff's termination, Defendant failed to consult with the Department of Labor to determine whether Plaintiff's pay structure and job duties rendered him exempt under the FLSA.

62.     Prior to Plaintiff's termination, Defendant failed to consult with an accountant to determine whether Plaintiff's pay structure and job duties rendered him exempt under the FLSA.

63.     Prior to Plaintiff's termination, Defendant failed to consult with labor counsel to determine whether Plaintiff's pay structure and job duties rendered him exempt under the FLSA.

64.     Defendant failed to properly disclose to or apprise Plaintiff of his rights under the FLSA.

65.     Due to the intentional, willful, and unlawful acts of Defendant, Plaintiff suffered and continues to suffer damages and lost compensation for time worked over forty (40) hours per week, plus liquidated damages, as well as the extended statute of limitation permitted under the FLSA.

66.     Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in his favor against Defendant:

        a.     Declaring, pursuant to the FLSA, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA;

        b.     Awarding Plaintiff overtime compensation in the amount due to him for Plaintiff's time worked in excess of forty (40) hours per work week;

        c.     Awarding Plaintiff liquidated damages in an amount equal to the

overtime award;

d.     Awarding Plaintiff reasonable attorneys' fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

e.     Awarding Plaintiff pre-judgment interest; and

f.     Ordering any other further relief the Court deems just and proper.

## COUNT II
### FLORIDA'S PRIVATE WHISTLEBLOWER ACT – UNLAWFUL RETALIATION

67.     Plaintiff realleges and incorporates all allegations contained within Paragraphs 1-43 of the Complaint as if fully set forth herein.

68.     On January 21, 2018, Defendant terminated Plaintiff from his employment in violation of Section 448.102(3), Florida Statutes.

69.     Plaintiff was fired based upon his objections to, and refusal to participate in, Defendant's illegal activity, or what he reasonably believed to be illegal activity, in violation of Section 448.102(3), Florida Statutes.

70.     Plaintiff objected to a violation of a law, rule, or regulation, or what he reasonably believed to be a violation of a law, rule, and regulation, and was fired as a direct result of same, which constitutes a violation of the FWA.

71.     The temporal proximity between Plaintiff's protected activity/objections, and his termination is sufficiently close.

72.     But for Plaintiff's objections to Defendant's illegal activity, or what he reasonably believed to be illegal activity, Plaintiff would not have been terminated.

73.     Defendant does not have a legitimate, non-retaliatory reason for Plaintiff's termination.

74.     As a result of Defendant's intentional, willful, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, lost wages, lost benefits, lost employment status, as well as humiliation, pain and suffering, and other monetary and non-monetary losses.

**WHEREFORE**, Plaintiff requests a judgment in his favor and against Defendant for his actual and compensatory damages, including, but not limited to, front pay, back pay, emotional distress damages, declaratory and injunctive relief, payment of his attorneys' fees and costs, and such other relief deemed proper by this Court.

## COUNT III
## BREACH OF ORAL CONTRACT

75.     Plaintiff realleges and incorporates all the allegations contained within Paragraphs 1-20, and 44-55, of the Complaint as if fully set forth herein.

76.     Plaintiff and Defendant entered into an oral Contract in September 2017.

77.     Defendant offered Plaintiff the compensation described in Paragraph 45, above.

78.     Plaintiff accepted Defendant's offer described in Paragraph 45.

79.     In consideration of Defendant's offer and Plaintiff's acceptance of same, Plaintiff commenced and performed work on Defendant's behalf.

80.     Defendant failed to pay Plaintiff the agreed upon wages and other remuneration pursuant to the parties' oral Contract.

81.     Defendant breached the parties' oral Contract.

82.     Plaintiff has been damaged due to Defendant's breach of the oral Contract in the form of lost wages and other remuneration.

83.     Pursant to Section 448.08, Florida Statutes, Plaintiff is entitled to costs of this action and reasonable attorneys' fees and costs, as he is seeking unpaid wages to which he is entitled.

**WHEREFORE,** Plaintiffs requests a judgment in his favor and against Defendant for his contractually entitled pay pursuant to the parties' oral Contract, declaratory and injunctive relief, payment of his costs and attorneys' fees pursuant to Section 448.08, Florida Statutes, and such other relief deemed proper by this Court.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable as a matter of right by jury.


Dated this 13th day of September, 2018.


Respectfully submitted,
*/s/ Noah E. Storch*
Noah E. Storch, Esq.
Florida Bar No. 0085476
Robert Pecchio, Esq.
Florida Bar No.: 1005955
RICHARD CELLER LEGAL, P.A.
7450 Griffin Road, Suite 230
Davie, Florida 33314
Telephone: (866) 344-9243
Facsimile:  (954) 337-2771
E-mail: noah@floridaovertimelawyer.com
E-mail: robert@floridaovertimelawyer.com

*Attorneys for Plaintiff*

Filing # 77839680 E-Filed 09/13/2018 01:48:59 PM

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR CHARLOTTE COUNTY, FLORIDA
CIVIL ACTION

JEREMY WILSON,

      Plaintiff,

vs.

RELIANT REAL ESTATE
MANAGEMENT LLC, d/b/a
STORESMART OF ENGLEWOOD,
a Florida Limited Liability Company,

      Defendant.

_____/

Case File No.:
Case Type:

## STANDING ORDER FOR NON-FORECLOSURE

## CIVIL CASES IN CHARLOTTE COUNTY

PURSUANT to Florida Rule of Civil Procedure 1.200(a), Florida Rule of Judicial Administration 2.545, and Administrative Order I . 13 entered by the Chief Judge of this Circuit, the parties are ordered to adhere to the following information and procedures applicable to civil lawsuits:

1. SERVICE OF THIS ORDER. The Plaintiffis directed to serve a copy ofthis order with each Summons issued in this case. One copy of this Order is to be filed with the Clerk of the Circuit Court with the issuance of the Summons. The Plaintiff shall pay the appropriate fees on copies for each Standing Order issued and attached to the Summons.

2. CIVIL CASE MANAGEMENT SYSTEM. The Supreme coun of Florida has established guidelines for the prompt processing and resolution of civil cases. This . Court has adopted a case management system to help meet those guidelines. In contested cases, the parties are required to pat•ticipate in the case management system. The case management system requires early consultation and cooperation among the parties for the preparation and submission of an Agreed Case Management Plan, early interaction with a Civil Case Manager and early involvement by the Court. The Agreed Case Management Plan requires the panties to identify a case track, confer in a good faith attempt to narrow the matters in controversy, identify the issues that require direct involvement by the Court, and establish a schedule for addressing those issues [1]. The

Agreed Case Management Plan may be accessed at the Court's website at: htt ://www.ca.c'is20.or home/charlotte/chardcm.as .

Unless all of the Defendants have been served and have been defaulted, an Agreed Case Management Plan will be submitted to the Court, attention Civil Case Manager,

---

[1] Case Track options include Expedited, Standard or Complex. Case Tracks have been established in order to comply with the case disposition standards set forth in Florida Rule of Judicial Administration 2,250(a)(1)(B).

at the Charlotte County Justice Center, 350 E. Marion Avenue, Punta Gorda, FL 33950, on or before 150 days from the date of filing the initial complaint. If the parties are unable to agree on an Agreed Case Management Plan, a case management conference will be scheduled by the Coun. If a case management conference is scheduled, attendance by trial counsel and those palties who are not represented by counsel is mandatory.

3. ALTERNATIVE DISPUTE RESOLUTION (ADR). ADR provides patties with an out-of-court alternative to setting disagreements. The Court requires the parties to participate in ADR prior to trial. Mediation is mandatory unless the patties stipulate to non-binding arbitration in lieu of mediation. Mediation is a conference at which an independent third party attempts to arrange a settlement between the parties.

4. RULES OF PROFESSIONALISM. The Twentieth Judicial Circuit has adopted Administrative Order 2.20, which sets forth standards of professional courtesy and conduct for all counsel or pro-se litigants practicing within the Circuit. The Court requires that all familiarize themselves with and comply with Administrative Order 2.20. Administrative Order 2.20 may be viewed on the Court's website at www.cs.cjis20.org/web/main/as admin.asp

DONE AND ORDERED in Punta Gorda, Charlotte County, Florida on this 13th Day of September 2018.

HON. LISA S. PORTER, Circuit Judge